1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11   EAMMA JEAN WOODS, et al.,

12                                        Plaintiffs,

         vs.

13

14   JULIE L. MYERS, et al.,

15                                        Defendants.

CASE NO. 07cv1078 DMS (PCL)

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTIONS TO
DISMISS**
[Doc. 23, 24, 25]

16
17       Pending before the Court are two motions to dismiss Plaintiffs' Complaint. The first was filed

18   by Defendants Corrections Corporation of America ("CCA") and Joe Easterling ("Easterling") on

19   August 14, 2007 ("CCA Motion," Doc. 23). The second was filed by thirteen Immigrations and

20   Customs Enforcement individuals named as Defendants (collectively, "Federal Defendants") ("Joint

21   Motion," Doc. 24).[1] CCA and Easterling joined in the Joint Motion. (Doc. 25). The Court took the

22   matter under submission without oral argument on September 28, 2007. The Joint Motion is

23   GRANTED as to Plaintiffs Carcamo and Monteagudo-Guerrero, and DENIED as to all other Plaintiffs.

24   The CCA Motion is DENIED in its entirety.

25

26       [1] Pursuant to 5 U.S.C. § 702, Federal Defendants asked the Court to substitute Immigration and
     Customs Enforcement or, alternatively, Julie L. Myers, and the Division of Immigration Health
27   Services for the individuals named as Federal Defendants in this proceeding. However, 5 U.S.C § 702
     does not appear to require this; instead it allows Plaintiffs to "specify the Federal officer or officers
28   (by name or by title) and their successors in office, personally responsible for compliance." Thus, the
     Court declines to change the caption of the case.

1

2

# I.

## BACKGROUND[2]

Plaintiffs are eleven civil immigration detainees in the custody of U.S. Immigration and Customs Enforcement ("ICE") who are or were housed at San Diego Correctional Facility ("SDCF"), a contract detention facility in Otay Mesa, California operated by CCA. Defendant Easterling is the warden at that facility. All other Federal Defendants are employees of ICE sued in their official capacities.

On June 13, 2007, Plaintiffs filed their Complaint seeking injunctive and declaratory relief and alleging that deficiencies in the medical care provided at SDCF constituted a violation of their Due Process Rights. (Doc. 1). In particular, Plaintiffs alleged necessary medical, dental, mental health, and vision care are routinely delayed or denied. (Compl. at 11, 29-37).

On June 22, 2007, Plaintiffs filed a motion to certify a class representing 600-800 detainees in ICE custody who are now or in the future will be confined at SDCF. (P's Mot. for Class Cert. at 1, Doc. 11). The Court will hear oral arguments and take that motion under submission within the next several weeks. In the meantime, two of the eleven currently named Plaintiffs are no longer detained at SDCF. Winston Alexander Carcamo ("Carcamo") was removed to Belize on February 7, 2007, and Marta Monteagudo-Guerrero ("Monteagudo-Guerrero") was granted voluntary departure and subsequently released on her own recognizance on June 22, 2007.

The CCA Motion asserts the Complaint against CCA and Easterling should be dismissed because (1) Plaintiffs do not have standing to bring these claims against these defendants; and (2) Plaintiffs have not alleged sufficient facts to state a claim for injury pursuant to Federal Rule of Civil Procedure 12(b)(6). (CCA Motion at 2). Arguments in the CCA Motion focus on CCA's and Easterling's assertions that they are not the parties responsible for providing medical services. (Id. at 2). The Joint Motion asserts (1) Plaintiffs Carcamo and Monteagudo-Guerrero should be dismissed from the lawsuit because their claims are moot and (2) Plaintiffs have failed to state a sufficient claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). (Joint Motion at 2).

---

[2] The facts presented are taken from the parties' pleadings. The Court makes no finding as to their truth.

# II.

## DISCUSSION

### A.    Standing

_____Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases or controversies. U.S. Const. Art. III. To establish a case or controversy, a plaintiff must demonstrate three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact." *Id.* Second, there must be a "causal connection between the injury and the conduct complained of— the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court." *Id.* Third, it must be "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Id.*

In cases where plaintiffs are asking for injunctive relief, the standing requirements tighten. Plaintiffs must prove a likelihood of future, irreparable harm.  It is not enough for a plaintiff in equity to allege a prior injury: "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).  While past wrongs can be "evidence bearing on whether there is a real and immediate threat of repeated injury," *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), a plaintiff must generally prove there is a likelihood of a future threat of the same kind by the same individuals involved in the prior wrongful conduct. *See, e.g. Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Golden v. Zwickler*, 394 U.S. 103, 109 (1969).

In *Lyons*, for example, the Supreme Court determined whether a plaintiff had standing to pursue injunctive and declaratory relief against the City of Los Angeles. *Lyons*, 461 U.S. at 97. City police officers in *Lyons* had placed plaintiff in a chokehold during a traffic stop five months prior to the lawsuit. *Id.* at 97-98. Plaintiff sought an injunction prohibiting the use of chokeholds except in situations where the proposed victim was threatening officers. *Id.* at 98.  The court held plaintiff lacked standing because he had not established a real and immediate threat that he would again be stopped for a traffic violation by officers who would illegally choke him. *Id.* at 105. In order to establish an actual controversy, the plaintiff would have had to allege that he would have had another encounter

with the police and assert that either (1) all police officers would always choke any citizen, *or* (2) that the City had ordered or authorized the officers to act in such a manner. *Id.* at 105-106 (emphasis added).

Here, CCA and Easterling first claim that since they do not provide medical, psychiatric, or dental services to SDCF detainees, Plaintiffs cannot prove they pose a risk of future injury.  As a corollary, no injunction against CCA and Easterling could redress Plaintiffs' alleged injuries. Although Plaintiffs do not allege CCA and Easterling are directly responsible for providing medical care, they do allege these defendants have taken action that directly led to the illegal deprivation or delay of Plaintiffs' medical care. For example, they allege Easterling establishes CCA's policies regarding accommodating detainees with special medical needs and arranging transportation for detainees to attend off-site medical appointments. (Compl. ¶ 34). They also alleged these policies are deficient. (Compl. ¶ 46-47).

As for CCA, although Plaintiffs admit CCA has not provided medical services to detainees since June 1, 2002 (Compl. ¶ 49), they also allege instances of inaction by CCA's employees after being alerted to situations demanding medical care.  For example, Plaintiffs allege CCA was notified of an inmate's need for psychiatric attention, but took no action. Days later, the inmate committed suicide. (Comp. ¶ 115).  Plaintiffs also allege CCA officials were notified of an inmate's collapse, but instead of performing CPR, a CCA official stood over the inmate, who was in obvious respiratory distress, for 15 minutes until help arrived. The inmate died within twenty-five minutes of the incident. (Compl. ¶ 124). While it is true that neither inmate in these incidents are plaintiffs in this lawsuit, these allegations could support an inference that CCA has a pattern of delaying medical treatment, and the alleged pattern of delay causes injury.

Plaintiffs must also allege that risk of harm due to delayed or denied medical treatment affects Plaintiffs named in the lawsuit.  To meet this requirement, the Complaint lists several plaintiffs currently suffering from mental illness and chronic physical illness.  (Compl. ¶ 110-115, 67-73). Therefore, although CCA and Easterling are not directly responsible for inmate care, the Complaint sufficiently alleges the risk of future injury arising out of conduct attributable to both parties.

Second, CCA and Easterling claim that in order to qualify for injunctive relief, the stricter

standing requirements of *Lyons* would require Plaintiffs to allege they are likely to "either attempt to commit suicide or have a heart attack, all of CCA's employees would have a deficient response, and the deficient response would be a result of CCA's policies." (CCA Motion at 5).  As a preliminary matter, the Court must clarify the *Lyons* requirements. *Lyons* did not require all three allegations. Rather, *Lyons* required allegations of a future "encounter with the police" along with an assertion that *either* (1) all police officers would always choke a citizen, *or* (2) the City ordered or authorized police officers to act in this manner– that is, the actions are a result of policy. *Lyons*, 461 U.S. at 106. It is therefore sufficient that Plaintiffs allege, as they do, that (1) certain Plaintiffs currently suffer from mental illness, depression, or medical problems likely to require an emergency response, (Compl. ¶ 110-115, 67-73), and (2) the delays are "routine" and entrenched in policy. (Compl. ¶ 45-46).

In addition, Defendant's proposed required allegations are too specific. In *Lyons*, the plaintiff sought an injunction barring the specific police practice of using chokeholds. *Lyons*, 461 U.S. at 98. Thus, the *Lyons* court required him to allege he would again suffer a chokehold at the hands of a police officer.  Here, Plaintiffs seek relief from "policies, practices, acts, and omissions" giving rise to a pattern of denying or delaying medical treatment in violation of the Fifth Amendment. (Compl. ¶ d.-e. at  44). Thus, Plaintiffs do not have to show a likelihood of encountering exactly the same scenario involving exactly the same illness. Instead, they must allege that they are likely to be injured in a similar way.[3] Plaintiffs do allege such a likelihood. Suicide and death by heart attack are examples of the kind of injury Plaintiffs allege could result from future delays.  Thus, the requirements of *Lyons* are met. Plaintiffs have standing to pursue these claims against Defendants.

**B.    Mootness**

Defendants contend that because Carcamo and Monteagudo-Guerrero are no longer housed at SDCF, their claims are moot. (Joint Motion at 4). Plaintiffs respond that in class actions involving prisoners or detainees, the removal or release of a named plaintiff, even prior to class certification,

---

[3] "Absent a sufficient likelihood that he will again be wronged *in a similar way*, Lyons is no more entitled to an injunction than any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *Lyons* at 111. (emphasis added). This language suggests Plaintiffs must allege they will likely be future victims of the same "certain practices" alleged in the Complaint. If the "certain practices" alleged are broader than those of *Lyons*, the range of future injury alleged can also be broader.

1   does not moot the claims of the unnamed class member or eliminate the named plaintiff's personal

2   stake in obtaining class certification. (Opp. at 8).

3         The Supreme Court has recognized that "some claims are so inherently transitory that the trial

4   court will not have even enough time to rule on a motion for class certification before the proposed

5   representative's individual interest expires." *United Sates Parole Comm'n, et al. v. Geraghty*, 445 U.S.

6   388, 398 (1979). The Ninth Circuit, in remanding a case for decision by the district court on a similar

7   prisoner class certification motion, gave the district court the following guidance:

8         If the district court finds the claims are indeed 'inherently transitory,' then the action
          qualifies for an exception to mootness *even if* there is no indication that ... current
9         class members may again be subject to the acts that gave rise to the claims. This is
          because there is a constantly changing putative class that will become subject to these
10        allegedly unconstitutional conditions.... On the other hand, if the district court finds
          that the class claims are not sufficiently transitory to qualify for this exception to the
11        mootness doctrine, it should then consider whether putative class members with live
          claims should be allowed to intervene.

12

13   *Wade v. Kirkland*, 118 F.3d 667, 670 (9th Cir. 1997) (citations omitted).

14        The Court finds these class claims are not sufficiently transitory to qualify for this exception.

15   Once the class is certified, claims that become moot may no longer be dismissed on those grounds.

16   *Sosna v. Iowa*, 419 U.S. 393, 401-402 (1975). Even if class certification is denied, all named plaintiffs,

17   even those whose individual claims later become moot, retain standing for purposes of appealing the

18   denial. *Geraghty*, 445 U.S. at 404.[4] Thus, a case that is "sufficiently transitory" must be so short in

19   duration that it will not survive the Court's decision on the class certification motion. The class

20   certification motion in this case will be heard in a matter of weeks. Plaintiffs admit "many detainees

21   spend months or years awaiting a final determination of their immigration case." (Compl. ¶ 2).

22   Currently, there are nine named representatives that have active claims. Plaintiffs have not argued that

23   any of these nine are facing immediate release. They have argued only that dismissing Carcamo's and

24   Monteagudo-Guerrero's claim might induce future defendants to transfer or release all named plaintiffs

25   to render the class action moot. However, there is no evidence that Defendants' release of these two

26

27        [4] However, the Court in *Geraghty* limited its holding to the appeal. "A named plaintiff whose
     claim expires may not continue to press the appeal on the *merits* until a class has been properly
28   certified. If, on appeal, it is determined that class certification properly was denied, the claim on the
     merits must be dismissed as moot." 445 U.S. at 404. (emphasis added, citations omitted).

1   Plaintiffs was for any improper purpose.  Moreover, the Court expresses no opinion on whether the

2   entire class claim would be dismissed if all named Plaintiffs were transferred or released. The Court's

3   action today is limited to dismissing only Plaintiffs Carcamo and Monteagudo-Guerrero from this

4   lawsuit because their individual claims are moot.

5       **C.      12(b)(6) Motions to Dismiss**

6       A dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate only if the

7   complaint contains no cognizable legal theory or an absence of sufficient facts alleged to support a

8   cognizable legal theory. *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).  In considering the matter, the

9   Court must accept all material allegations in the complaint, and all reasonable inferences to be drawn

10  from them as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).

11      The parties dispute whether Plaintiffs are required to allege facts sufficient to state a claim for

12  relief under the Eighth Amendment to the United States Constitution. The Ninth Circuit applies the

13  Eighth Amendment's analysis of inadequate medical care to criminal detainees, including pre-trial

14  detainees, who otherwise derive their freedom from unconstitutional punishment from the due process

15  clauses of the Fifth and Fourteenth Amendments. *Lolli v. County of Orange,* 351 F.3d 410 (9th Cir.

16  2003); *Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002); *Alvarez-Machian v. U.S.,* 107 F.3d

17  696, 701 (9th Cir. 1996). The Eighth Amendment requires detainees to allege deliberate indifference

18  to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). On the other hand, individuals

19  who have been involuntarily civilly committed, such as mentally ill patients, are not required to allege

20  deliberate indifference. *See Youngberg v. Romeo*, 457 U.S. 307, 312 n.11 (1982). Rather, "liability may

21  be imposed only when the decision by the mental health professional is such a substantial departure

22  from accepted professional judgment, practice, or standards as to demonstrate that the person actually

23  did not base the decision on such a judgment." *Id.* at 323.

24      The standard applicable to immigration detainees is not at all clear. A substantial legal dispute

25  exists between the parties as to whether immigration detainees should be treated as criminal, pre-trial

26  detainees, or involuntarily committed individuals.  Plaintiffs note that the Ninth Circuit has, in the

27  context of appointing an attorney to an immigration detainee, recognized the civil character of certain

28  immigration detentions. *Agyeman v. Corr's. Corp. of Am.,* 390 F.3d 1101, 1104 (9th Cir. 2004)

1   (Incarcerating a person on noncriminal charges "may be a cruel necessity of our immigration policy;

2   but if it must be done, the greatest care must be observed in not treating the innocent like a dangerous

3   criminal."). Moreover, the Ninth Circuit has held individuals awaiting civil commitment proceedings,

4   in addition to pre-trial detainees are entitled to more "considerate treatment of confinement than

5   criminals whose conditions of confinement are designed to punish." *Jones v. Blanas*, 393 F.3d 918, 931

6   (9th Cir. 2004). However, the Ninth Circuit has never squarely decided whether immigration detainees,

7   whose detention is technically civil in nature but who are nonetheless detained in part because they

8   violated immigration laws, are required to plead the Eighth Amendment standard. Regardless, since

9   Plaintiffs allege facts sufficient to meet the stricter Eighth Amendment standard, the Court need not

10  reach the question.[5]

11       The Eighth Amendment prohibits "deliberate indifference to serious medical needs." *Estelle*,

12  429 U.S. at 104. Plaintiffs allege "defendants' policies, practices, acts, and omissions with respect to

13  the provision of medical care at SDCF... constitute deliberate indifference to plaintiffs' serious medical

14  needs." (Compl. ¶ 138). Plaintiffs also allege each element with particularity.

15       Deliberate indifference can take the form of "intentionally denying or delaying access to medical

16  care or intentionally interfering with the treatment once prescribed." *Id.* at 104-105. Plaintiffs need not

17  allege that Defendants knew of a specific risk from a specific source. "The question under the Eighth

18  Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a

19  sufficiently substantial risk of serious damage to his future health, and it does not matter whether the

20  risk comes from a single source or multiple sources..." *Farmer v. Brennan*, 511 U.S. 825, 843 (1994).[6]

21  Plaintiffs allege, *inter alia,* Defendants "routinely ignore requests for urgent care," (Compl. ¶ 2),

22

23       [5] "Even when the defense presents a purely legal question, the courts are very reluctant to

24  determine disputed or substantial issues of law on a motion to strike; these questions quite properly
    are viewed as determinable only after discovery and a hearing on the merits." *Salcer v. Envicon
    Equities Corp.,* 744 F.2d 935 (2d Cir. 1984), *quoting* 5 C. Wright & A. Miller, *Federal Practice and*

25  *Procedure* § 1381, at 800-01; *See also Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.,* 217

26  F. Supp. 2d 1028, 1044 (C.D.Ca. 2002). Although this is a motion to dismiss rather than a motion to
    strike, as there has been no hearing on the merits, the Court proceeds with the same caution.

27       [6]In that Eighth Amendment case, the Court held it was unnecessary to prove that a prison

28  official knew "that the complainant was especially likely to be assaulted by the specific prisoner who
    eventually committed the assault." It was enough that "he was aware of an obvious, substantial risk
    to inmate safety." *Id.*

07cv1078

1   "persons charged with authorizing treatment delay or deny treatment in the hope that detainees will be
2   removed from the United States or released from detention sooner, rather than later," (Compl. ¶ 45),
3   and "[t]he general principles reflected in the DIHS Benefits Package form the foundation for DIHS's
4   pervasive practice of refusing to provide necessary medical services to immigration detainees" and
5   "reflect a policy of delay and denial of care." (Compl. ¶ 46-47). The allegations that detainees requested
6   medical care could give rise to an inference that Defendants had knowledge of the need for care.
7   Plaintiffs' allegations that Defendants then denied or delayed response to those requests in compliance
8   with policy thus supports an inference of deliberate indifference on the part of both individual and
9   corporate Defendants.

10       A "serious medical need" exists where "the failure to treat a prisoner's condition could result
11   in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez,* 298
12   F.3d 898, 904 (9th Cir. 2002) (citations omitted).   Other factors to consider include: (1) whether a
13   reasonable doctor or patient would perceive the medical need in question as important and worthy of
14   comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3)
15   the existence of chronic and substantial pain." *Brock v. Wright*, 315 F. 3d 158, 162 (2d Cir. 2003).
16   Plaintiffs allege, *inter alia,* the following medical needs with particularity: serious dental problems (Id.
17   ¶ 13), cystic growths (Id. ¶ 17), post-traumatic stress disorder with a suicide risk (Id. ¶ 11, 117), bi-polar
18   disorder and depression (Id. ¶ 112), a shattered molar (Id. ¶ 64, 100), and Hepatitis C (Id. ¶ 19, 71). A
19   jury could find any one of these medical problems to be "serious."

20       Accordingly, Defendants' motions to dismiss for failure to state a claim are DENIED.
21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.**

**CONCLUSION**

For the foregoing reasons, Defendants' Joint Motion to dismiss is GRANTED as to Plaintiffs Carcamo and Monteagudo-Guerrero, and DENIED as to all other Plaintiffs. CCA and Easterling's Motion to Dismiss is DENIED in its entirety.

**IT IS SO ORDERED.**

DATED:  October 29, 2007

_____
HON. DANA M. SABRAW
United States District Judge

- 10 -