# EXHIBIT B

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| EAMMA JEAN WOODS, et al, | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | No. 08-55376 |
| | ) | |
| | ) | SETTLEMENT AGREEMENT |
| v. | ) | |
| | ) | |
| JOHN MORTON, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |
| | ) | |

## I. INTRODUCTION AND PROCEDURAL PROVISIONS

1. All Plaintiffs and all Defendants (collectively, "the Parties") join in this Settlement Agreement ("Agreement"). Plaintiffs are immigration detainees in the custody of U.S. Immigration and Customs Enforcement ("ICE"), an agency within the United States Department of Homeland Security, at the San Diego Correctional Facility ("SDCF" or "the Facility") in Otay Mesa, California. Defendants are officials and employees of ICE ("Federal Defendants") and Corrections Corporation of America ("CCA"), the private company that manages SDCF.

2. This action was filed pursuant to 28 U.S.C. § 1331. The United States District Court for the Southern District of California ("District Court") has general authority to grant injunctive relief pursuant to 5 U.S.C. § 702 and Fed. R. Civ. P. 65.

3. Within 7 days of signing this Agreement, the parties shall file in the United States District Court the joint motion attached as Exhibit A to this Agreement. If the District Court grants the motion, within 7 days, the parties shall file a joint motion in the United States Court of

1.

Appeals for the Ninth Circuit ("Ninth Circuit") requesting that it remand to the District Court for certification of a settlement class action. The joint motion to the Ninth Circuit is attached as Exhibit B to this Agreement.

4. The proposed settlement class is defined as all immigration detainees in ICE custody who are detained at SDCF at any time from the Effective Date of this Agreement until this Agreement terminates pursuant to § V of this Agreement ("Class Members"). The Effective Date is the date upon which the Agreement is approved by the District Court.

5. The purpose of this Agreement is to settle the above captioned case. This Agreement does not cover the provision of medical care at any facility other than SDCF and shall not be interpreted otherwise. This Agreement does not cover occurrences or incidents that happen to Class Members while they do not reside at SDCF.

6. Defendants deny all the allegations in the Complaint filed in this case. This Agreement does not constitute and shall not be construed or interpreted as an admission of any wrongdoing or liability by any party.

7. The Parties note that SDCF's medical, mental health, dental, and vision care were accredited by the Joint Commission on Accreditation of Hospitals ("Joint Commission") on September 15, 2007; the American Correctional Association ("ACA") on November 16, 2007; and the National Commission on Correctional Health Care ("NCCHC") on February 22, 2008. Both the ACA and the NCCHC found SDCF to be 100% compliant with their standards.

## II. SUBSTANTIVE PROVISIONS

8. Class Members shall receive health care that meets or exceeds the following NCCHC standards as set forth in *Standards for Health Services in Jails* (2008): Access to Care (J-A-01); Medical Autonomy (J-A-03); Staffing (J-C-07); Pharmaceutical Operations (J-D-01); Medication Services (J-D-02); Receiving Screening (J-E-02); Initial Health Assessment (J-E-04);

2.

Mental Health Screening and Evaluation (J-E-05); Oral Care (J-E-06); Nonemergency Health Care Requests and Services (J-E-07); Emergency Services (J-E-08); Segregated Inmates (J-E-09); Patient Escort (J-E-10); Continuity of Care During Incarceration (J-E-12); Basic Mental Health Services (J-G-04); Suicide Prevention Program (J-G-05); Care of the Pregnant Inmate (J-G-07); Aids to Impairment (J-G-10); and Health Record Format and Contents (J-H-01) ("NCCHC Standards"). A copy of the NCCHC Standards is attached to this Agreement as Exhibit C and incorporated by reference. Subsequent to court approval of this Agreement, Federal Defendants shall obtain a finding from NCCHC that SDCF complies with the above standards. Compliance with the NCCHC Standards, for the purposes of determining whether Defendants have achieved compliance with this Agreement, is to be determined by NCCHC only, and Plaintiffs shall not challenge a finding by NCCHC of SDCF's compliance with NCCHC Standards.

9. In light of the unique demands at SDCF to deliver mental health care to the detainees housed at the facility, within nine months of the Effective Date of this Agreement, Federal Defendants shall expand the provision of mental health care professionals for the Class Members by providing the equivalent of one full-time additional psychiatrist and four full-time additional psychiatric nurses for the purpose of providing such care, unless unforeseen circumstances or emergency situations preclude Federal Defendants from meeting this timeframe. Federal Defendants shall rectify such circumstances or situations within a reasonable time period. The timeliness requirement of this provision shall be deemed satisfied upon the matriculation of the above medical professionals on or after March 1, 2010.

10. If ICE requires a Treatment Authorization Request ("TAR"), then a TAR prepared by a medical practitioner for off-site non-emergency medical treatment for a Class

Member shall be granted, denied, or remanded for more information within five business days of submission of the TAR, with expedited consideration if the TAR is designated as urgent. Federal Defendants shall provide a system for appeal of denials of TARs. Either the medical practitioner or the Class Member may utilize the appeals system. Such appeals shall receive a response within ten business days of such submission.

11. If the reviewer of a TAR remands it for additional information, the revised TAR shall be submitted by the SDCF medical practitioner within five business days of the remand, and the reviewer shall grant or deny the revised TAR within five business days of receipt. In order to minimize the problem of missing information from requests, Federal Defendants shall provide medical practitioners at SDCF with instructions and training on appropriate completion of such requests. In case of an emergency, medical personnel at SDCF shall take necessary steps to ensure appropriate off-site medical care, without regard to the TAR requirements for non-emergency care.

12. Defendants shall take all reasonable steps to ensure that authorized off-site medical treatment commences within a clinically appropriate period of time. The SDCF medical practitioner responsible for the Class Member's treatment shall review the time frame for scheduled off-site appointments to ensure scheduling within a clinically appropriate period of time, and shall take all reasonable steps to ensure the completion of off-site treatment within the contemplated period of time. Federal Defendants shall maintain a tracking system for pending off-site appointments for Class Members.

13. Federal Defendants shall officially modify the May 6, 2006 version of the Division of Immigration Health Services Medical Dental Detainee Covered Services Package ("Benefits Package") as follows: (a) to provide that medical care shall be provided when

necessary to address a serious medical need; (b) to remove all references within the Benefits Package explicitly or implicitly stating that the Benefits Package primarily covers emergency services; (c) to remove all references to assessing for treatment other conditions only if the responsible physician believes that the detainee's condition, if left untreated during the period of ICE custody, would cause deterioration of the detainee's health or uncontrolled suffering affecting the detainee's deportation status; and (d) to remove all references requiring authorization, beyond that of the Division of Immigration Health Services ("DIHS") physician, employed at SDCF, to provide medical care that addresses a serious medical need.

14. Federal Defendants shall also review the May 6, 2006 version of the Benefits Package and remove from the list of examples of conditions that are usually not covered, but can be requested, those conditions that ordinarily or frequently constitute medical care necessary to address a serious medical need, regardless of whether such medical condition requires emergency or urgent treatment.

15. Defendant CCA shall ensure that appropriate training, policies, and/or practices shall continue to be implemented at SDCF, or, as applicable, shall be implemented, to provide reasonable assurances of the following: SDCF CCA custody staff shall respond to medical emergencies in a manner appropriate for correctional staff. This response shall include, as appropriate, unless emergency security issues necessary to maintain the safety of staff, Class Members, or the general public warrant overriding a response where such emergency security issues outweigh the danger to the Class Members, initiation and continuation of cardiopulmonary resuscitation; recognition and reporting on medical emergencies; appropriate interaction with, and response to, prisoners displaying symptoms of serious mental illness; and appropriate

attentiveness to the need to provide transportation escort services and similar medical support services for Class Members who require such services.

16. Defendant CCA shall also ensure that appropriate training, policies, and/or practices shall continue to be implemented at SDCF, or, as applicable, shall be implemented, to provide reasonable assurances that SDCF CCA staff carry out directives from medical staff related to treatment of Class Members. Such directives shall include, but are not limited to, the following: attending to specific medical conditions and limitations of individual Class Members, such as a Class Member's need for a bottom bunk because of seizure disorder; modification of restraint practices to conform to directives by appropriate medical staff; and directives not to use chemical agents on a particular Class Member or directives that certain mechanical restraints practices be avoided.

17. In an emergency situation in which a medical directive appears to be in tension with a security issue directly related to maintaining the safety of staff, Class Members, or the general public, the highest-level CCA supervisory staff available may make a determination to modify or disregard the medical directive if the danger to security outweighs the danger from disregarding the medical directive. If time permits, the CCA supervisory staff shall obtain advice from medical staff as to the degree of risk entailed by disregarding a particular medical directive, and possible alternatives under the circumstances to the directive to protect Class Member health. Defendants including CCA shall take reasonable steps to inform SDCF CCA custody officers of medical directives affecting SDCF CCA custody staff interaction with particular Class Members.

## III. MONITORING AND ENFORCEMENT

18. As confirmatory discovery evidencing Defendants' compliance with the terms of the Agreement, Defendants shall provide the following documents to counsel for Plaintiffs

according to the schedule below, provided that Plaintiffs supply executed medical releases to Defendants for all unredacted individual medical records. In the absence of executed medical releases, Defendants shall redact all personally identifiable information, including, but not limited to, names, alien registration numbers, and social security numbers, as appropriate.

    A. The first document production shall occur four months from the day that the District Court approves the Agreement. The second and last document production shall occur eight months from the day that the District Court approves the Agreement. Upon the District Court's approval of the Agreement, Federal Defendants shall request that the NCCHC accreditation inspection related to a determination of whether SDCF currently complies with the NCCHC Standards specified in ¶ 8, *supra*, commence at least 60 days after Defendants' first document production.

    B. On both occasions, Defendants' document production shall consist of a legible copy, produced electronically or in hard copy, of the following documents or information:

        1. a) current medical and mental health staffing, including authorized and filled positions and the status of hiring efforts; b) changes in the Benefits Package; c) changes in the TARs process; and d) changes to the facility formulary.

        2. A list of new medication orders (not including renewals) processed by the institutional pharmacy, along with a document showing when the medication was first delivered to the patient, for 30 consecutive new medication orders.

7.

Exhibit B Page 9

3. A list showing the date of admission into the facility, the date of the initial intake screening and the date of the 14-day comprehensive health appraisal for 30 consecutive newly-admitted Class Members.

4. The medical emergency transfer log (or a compilation) showing the time that emergency transfer was ordered, the time that the Class Member left the facility for diagnosis and treatment, the time the Class Member arrived at an outside treatment facility; and the reason for transferring the Class Member, for 20 consecutive medical or mental health emergency health care transfers.

5. Records of sick call requests and responses for a one-week period during each period covered by each document production.

6. Records of 30 consecutive TARs, along with any responses to those TARs and further communications between the SDCF medical practitioner preparing the TARs and the reviewer.

7. Any audits or evaluations conducted by any organizations, internal or external, of medical or mental health care at SDCF that occur during the course of the Agreement.

8. Policy and procedure manuals and local operating procedures governing dental, medical, mental health, and vision care provided at SDCF that are issued during the course of the Agreement.

19. Federal Defendants shall also provide a photocopy of a maximum of 20 individual Class Member medical records during the course of the Agreement if Plaintiffs provide an

executed medical release for each Class Member. In addition, Federal Defendants shall provide to Plaintiffs a copy of all medical records of Class Members who died during their confinement at SDCF during the time the Agreement is effective (whether death takes place at the facility or at a medical facility within 7 days following transfer) without a medical release or request from Plaintiffs. Any medical records relating to Class Member deaths do not count toward the 20 medical records specified in the first sentence of this paragraph. Plaintiffs reserve the right to seek a protective order from the District Court authorizing Class Counsel to review discrete medical records of Class Members, based on a specific showing of need, if such Class Member (i) has been removed from the U.S. and (ii) has not previously refused to execute a medical release for all unredacted individual medical records to Class Counsel.

20. Plaintiffs shall identify the week to be selected for documents described in ¶ 18.B.5 at least one month prior to the date Defendants are required to produce such records, and Defendants shall timely produce such records absent unforeseen circumstances or emergency situations that make such production infeasible within the specified time frame. Plaintiffs shall identify the applicable start periods for the documents described in ¶¶ 18.B.2, 18.B.3, 18.B.4, and 18.B.6, at least one month prior to the date Defendants are required to produce such records, and Defendants shall timely produce such records absent unforeseen circumstances or emergency situations.

21. In the event that class counsel for Plaintiffs alleges that Defendants have failed to comply in some significant respect with ¶¶ 9-20 of this Agreement on an individual or class-wide basis, class counsel shall provide Defendants with a written statement describing the alleged non-compliance ("Notice of Non-Compliance"). Defendants shall provide a written statement responding to the alleged violation within seven calendar days from receipt of the Notice of Non-

Compliance and, within 30 calendar days, counsel for the parties shall meet and confer in a good faith effort to resolve their dispute informally.

22. In the event that a Notice of Non-Compliance pursuant to ¶ 21 of this Agreement cannot be resolved informally, counsel for the parties in this litigation shall request that the assigned Magistrate Judge mediate the dispute. If the dispute has not been resolved through mediation in conformity with this Agreement within 60 days, class counsel may file a motion to enforce the Agreement in the District Court.

23. Notwithstanding ¶¶ 21-22, *supra*, in the event that class counsel for Plaintiffs allege that Defendants' noncompliance with ¶¶ 9-20 constitutes an imminent threat of failure to provide necessary treatment for a Class Member's serious medical needs, counsel for the parties shall jointly request that a Ninth Circuit mediator, preferably Claudia Bernard, expedite mediation. If the dispute has not been resolved through such mediation within ten business days of the Plaintiffs' Notice of Non-Compliance, counsel for Plaintiffs may file a motion to enforce the Agreement in the District Court.

24. Notice of the proposed Agreement, a copy of which is attached to this Agreement as Exhibit D and incorporated by reference, shall be provided to Class Members through posting in Spanish and English in the housing units at SDCF and through provision of individual notice for Class Members in segregated confinement. The District Court will thereafter hold whatever hearing it deems appropriate regarding approval of the Agreement.

IV. **RESERVATION OF JURISDICTION**

25. The parties consent to the reservation and exercise of jurisdiction by the District Court and the assigned Magistrate Judge over all disputes between and among the parties arising out of this Agreement, including, but not limited to, interpretation and enforcement of the terms of this Agreement through the mechanism described in ¶¶ 21-23 of this Agreement. Counsel for

the parties shall jointly execute and file a stipulation and proposed order attached to this Agreement as Exhibit E within 7 days after jurisdiction is returned to the District Court.

## V. TERMINATION OF THE AGREEMENT

26. Except as provided in ¶ 27 of this Agreement, *infra*, the relief granted in this Agreement shall terminate on the one-year anniversary of the date that the District Court approves the Agreement. On this date, the Parties shall stipulate to dismiss this action with prejudice, and the class defined in ¶ 4 shall dissolve.

27. Notwithstanding ¶ 26 of this Agreement, this Agreement shall not terminate to the extent that (a) Notice of Non-Compliance has been provided pursuant to ¶ 21; (b) a motion is pending pursuant to ¶ 23 that raises claims that Defendants have, in whole or in part, failed to comply with ¶¶ 9-20; or (c) to the extent that mediation pursuant to ¶¶ 22-23 is pending. In the event that such a Notice of Non-Compliance has been provided or such motion or mediation is pending, this Agreement shall terminate as to any provision not at issue in the Notice of Non-Compliance, motion, or mediation. If either the Federal Defendants or CCA Defendants are not subject to the Notice of Non-Compliance, motion or mediation described in this Paragraph, this Agreement shall terminate as to that Party, and the Parties shall stipulate to dismiss that Party from this action with prejudice. The requirements of ¶ 8 of this Agreement shall terminate as provided in ¶ 26 for any NCCHC Standard enumerated therein that NCCHC finds in compliance in its initial or, if necessary, subsequent inspection of SDCF conducted after the Effective Date of this Agreement. If NCCHC finds that Federal Defendants are in noncompliance with any such Standard(s), Federal Defendants shall have 90 days to cure any such deficiency and obtain NCCHC's determination of compliance. If NCCHC finds that any such noncompliance remains after this 90-day period, Federal Defendants shall have another 90 days to cure the deficiency and obtain NCCHC's determination of compliance. If, after the two 90-day periods have

elapsed, NCCHC finds that Federal Defendants remain in noncompliance with any Standard(s), Plaintiffs reserve the right to seek an order from the District Court requiring Federal Defendants to comply with such Standard within 90 days. On the one-year anniversary date of the District Court's approval of the Agreement, to the extent any other provision is currently subject to a Notice of Non-Compliance, the affected provision(s) of the Agreement shall terminate as soon as Defendants have reasonably rectified the issue(s) identified in the Notice of Non-Compliance, and, in any event, no later than two years from the date the District Court approves the Agreement, unless Plaintiffs prior to the two-year date convince the District Court that Plaintiffs are likely to prevail in demonstrating a substantial violation of the Agreement with respect to any issue of a Notice of Noncompliance. Notwithstanding anything else in this paragraph, this Agreement shall not terminate until the Court has ruled on any motion for enforcement based on a timely notice of non-compliance. Any extension of the Agreement pursuant to this provision shall include only the specific provision or provisions for which Plaintiffs demonstrate such likelihood of a substantial violation of the Agreement with respect to any issue of a Notice of Noncompliance.

28. Confirmatory discovery produced pursuant to this Agreement shall not be used for any purpose other than that related to monitoring and enforcing this Agreement, and such confirmatory discovery shall be disseminated only to (i) Plaintiffs' counsel and its experts, (ii) NCCHC for the sole purpose of determining Federal Defendants' level of compliance with the requirements of ¶ 8 of this Agreement, and, (iii) if necessary, under seal, the Magistrate Judge or District Court to resolve any alleged Notice of Non-Compliance. Plaintiffs shall provide Defendants with an index of all documents obtained through confirmatory discovery that are provided to NCCHC. All documents produced by Defendants pursuant to this Agreement shall

12.

Exhibit B Page 14

be returned to Defendants or destroyed within three weeks after the relief granted under this Agreement is terminated. After Plaintiffs have complied with the requirements of this paragraph, they shall send written confirmation to Defendants. The Parties further agree to file a joint motion for a protective order with the District Court, attached as Exhibit F to this Agreement, which sets out these terms and conditions of this disclosure within 30 days of the Effective Date of this Agreement. The proposed protective order is attached as Exhibit G to this Agreement.

29. Plaintiffs shall not request, and Defendants shall not produce, any further confirmatory discovery in accordance with this Agreement unless ordered by the Magistrate Judge or District Court to resolve any alleged Notice of Non-Compliance. The right of Plaintiffs' counsel to obtain documents related to SDCF other than through confirmatory discovery provided under this Agreement is neither enlarged nor diminished by this Agreement.

**VI. MISCELLANEOUS PROVISIONS**

30. The parties intend that nothing in this Agreement shall have any preclusive effect on any damages claim that any person may have as a result of his or her detention in ICE custody at SDCF, now or in the future. The parties further intend that nothing in this Agreement shall have any preclusive effect on any claim for injunctive relief that any such person may have that is outside the scope of the pleadings or that arises after injunctive relief pursuant to this Agreement is terminated pursuant to § V, *supra*. The parties further intend that nothing in this Agreement shall have any preclusive effect on any claim for injunctive relief that is outside the scope of the terms and conditions provided in this Agreement or that is outside the scope of the terms and conditions remaining in this Agreement following partial termination of the Agreement, or any claim by a person who is not a Class Member.

13.

Exhibit B Page 15

31. This Agreement constitutes the entire agreement among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior agreements, representations, statements, promises, and understandings, whether oral or written, express or implied, with respect to this Agreement.

32. This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of authorization and modification.

33. This Agreement shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

34. The Parties agree to bear their own attorneys' fees and costs in this action. Plaintiffs agree that they shall not seek, solicit, or request attorneys' fees and/or litigation costs provided under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other provision.

| | |
|---|---|
| Elizabeth Alexander<br>Law Offices of Elizabeth Alexander<br>1416 Holly St., NW<br>Washington, DC 20012<br><br>Date: _____<br><br>*Counsel for Plaintiffs-Appellants* | Victor M. Lawrence<br>U.S. Department of Justice<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868 Ben Franklin Station<br>Washington, DC 20044<br><br>Date: _____ |
| David Blair-Loy<br>ACLU San Diego & Imperial Counties<br>P.O. Box 87131<br>San Diego, CA 92138<br><br>Date: _____<br><br>*Counsel for Plaintiffs-Appellants* | Samuel P. Go<br>U.S. Department of Justice<br>Office of Immigration Litigation<br>District Court Section<br>P.O. Box 868 Ben Franklin Station<br>Washington, DC 20044<br><br>Date: _____<br><br>*Counsel for Defendants-Appellees* |

_[signature]_
_____
Anthony M. Stiegler
Cooley, LLP
4401 Eastgate Mall
San Diego, CA 92121

Date: December 15, 2010

***Counsel for Plaintiffs-Appellants***

_____
Daniel P. Struck
Jones Skelton & Hochuli
2901 North Central Avenue
Suite 800
Phoenix, AZ 85012

Date: _____

***Counsel for Defendants-Appellees***

2341798.1

15.

31. This Agreement constitutes the entire agreement among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior agreements, representations, statements, promises, and understandings, whether oral or written, express or implied, with respect to this Agreement.

32. This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of authorization and modification.

33. This Agreement shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

34. The Parties agree to bear their own attorneys' fees and costs in this action. Plaintiffs agree that they shall not seek, solicit, or request attorneys' fees and/or litigation costs provided under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other provision.

_____
Elizabeth Alexander
Law Offices of Elizabeth Alexander
1416 Holly St., NW
Washington, DC 20012

Date: December 15, 2010

*Counsel for Plaintiffs-Appellants*

_____
David Blair-Loy
ACLU San Diego & Imperial Counties
P.O. Box 87131
San Diego, CA 92138

Date: _____

*Counsel for Plaintiffs-Appellants*

_____
Victor M. Lawrence
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868 Ben Franklin Station
Washington, DC 20044

Date: _____

_____
Samuel P. Go
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868 Ben Franklin Station
Washington, DC 20044

Date: _____

*Counsel for Defendants-Appellees*

14.

31. This Agreement constitutes the entire agreement among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior agreements, representations, statements, promises, and understandings, whether oral or written, express or implied, with respect to this Agreement.

32. This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of authorization and modification.

33. This Agreement shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

34. The Parties agree to bear their own attorneys' fees and costs in this action. Plaintiffs agree that they shall not seek, solicit, or request attorneys' fees and/or litigation costs provided under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other provision.

_____
Elizabeth Alexander
Law Offices of Elizabeth Alexander
1416 Holly St., NW
Washington, DC 20012

Date: _____

*Counsel for Plaintiffs-Appellants*

_____
David Blair-Loy
ACLU San Diego & Imperial Counties
P.O. Box 87131
San Diego, CA 92138
Date: 12/15/10

*Counsel for Plaintiffs-Appellants*

_____
Victor M. Lawrence
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868 Ben Franklin Station
Washington, DC 20044

Date: _____

_____
Samuel P. Go
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868 Ben Franklin Station
Washington, DC 20044

Date: _____

*Counsel for Defendants-Appellees*

| | _(signature)_ |
|---|---|
| _____ | _____ |
| Anthony M. Stiegler | Daniel P. Struck |
| Cooley, LLP | Jones Skelton & Hochuli |
| 4401 Eastgate Mall | 2901 North Central Avenue |
| San Diego, CA 92121 | Suite 800 |
| | Phoenix, AZ 85012 |
| Date: _____ | Date: 12-15-10 |
| **_Counsel for Plaintiffs-Appellants_** | **_Counsel for Defendants-Appellees_** |

2341798.1

15.

31. This Agreement constitutes the entire agreement among the parties as to all claims raised by Plaintiffs in this action, and supersedes all prior agreements, representations, statements, promises, and understandings, whether oral or written, express or implied, with respect to this Agreement.

32. This is an integrated agreement and may not be altered or modified, except by a writing signed by all representatives of all parties at the time of authorization and modification.

33. This Agreement shall be binding on all successors, assignees, employees, agents, and all others working for or on behalf of Defendants and Plaintiffs.

34. The Parties agree to bear their own attorneys' fees and costs in this action. Plaintiffs agree that they shall not seek, solicit, or request attorneys' fees and/or litigation costs provided under the Equal Access to Justice Act, 28 U.S.C. § 2412, or any other provision.

_____
Elizabeth Alexander
Law Offices of Elizabeth Alexander
1416 Holly St., NW
Washington, DC 20012

Date: _____

*Counsel for Plaintiffs-Appellants*

_____
David Blair-Loy
ACLU San Diego & Imperial Counties
P.O. Box 87131
San Diego, CA 92138

Date: _____

*Counsel for Plaintiffs-Appellants*

_____
Victor M. Lawrence
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868 Ben Franklin Station
Washington, DC 20044

Date: 12-15-10

_____
Samuel P. Go
U.S. Department of Justice
Office of Immigration Litigation
District Court Section
P.O. Box 868 Ben Franklin Station
Washington, DC 20044

Date: 12-15-10

*Counsel for Defendants-Appellees*

14.